IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**DAVID ANDREW LEVINE,**

Appellant,

**v.**                                                    **CIVIL ACTION NO.: 3:22-CV-60
(GROH)**

**MARTIN P. SHEEHAN, Trustee
of the Bankruptcy Estate of Geostellar, Inc.,**

Appellee.

## MEMORANDUM OPINION AND ORDER REVERSING IN PART BANKRUPTCY COURT'S MEMORANDUM OPINION AND ORDER AND REMANDING CASE

David Andrew Levine ("Appellant") brings this action on appeal from the United States Bankruptcy Court for the Northern District of West Virginia. The Appellant appeals from Chief Bankruptcy Judge B. McKay Mignault's March 21, 2022, Order Denying Defendant's Motion to Dismiss and Motion to Compel Arbitration in 3:19-ap-24. ECF No. 1. Upon review and consideration of the parties' briefs, the record, and pertinent case law, the Court finds that the facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Thus, a hearing is unnecessary in this matter. Fed. R. Bankr. P. 8013(c), 8019(b)(3). For the reasons that follow, the bankruptcy court's decision is **REVERSED IN PART AND REMANDED**.

### I.  Background[1]

### A.  Underlying Adversary Proceeding

On January 29, 2018, Geostellar, Inc., filed for Chapter 11 bankruptcy protection

---

[1] The facts recited are taken from the parties' briefs and the designated record on appeal.

in the United States Bankruptcy Court for the Northern District of West Virginia, as docketed in case 3:18-bk-45. Four months later, the bankruptcy court converted Geostellar's case from a Chapter 11 to a Chapter 7 proceeding. After the conversion, Martin P. Sheehan was designated as the Chapter 7 Trustee for Geostellar ("Appellee").

The Appellee then initiated an adversary proceeding, ancillary to Geostellar's bankruptcy proceeding, against the Appellant and Indeco Union on May 20, 2019, docketed as 3:19-ap-24. This adversary proceeding underlies the present appeal before this Court. In his initial Complaint, the Appellee alleged breach of contract, fraud, breach of fiduciary duty, and civil conspiracy claims.[2] ECF No. 14-1.[3] At all times relevant to the complaint, the Appellant served as the Chief Executive Officer and as a member of the Board of Directors of Geostellar. As CEO, the Appellant was bound by an Employment Agreement and Addendum, which the Appellee attached to the original complaint.

The initial business goal of Geostellar was to provide a marketplace connecting consumers interested in transitioning to solar energy with information related to vendors, installers, and financiers. To achieve this goal, Geostellar used a proprietary software. In the initial complaint, the Appellee detailed many actions taken by the Appellant where he unilaterally changed the focus of Geostellar's business and then otherwise acted adversely to Geostellar's new business interest. Specifically, the Appellee alleged that the Appellant, without permission from the Board of Directors, transformed the business of Geostellar from pursuing solar energy to developing cryptocurrency. The Appellant proposed that Geostellar develop a cryptocurrency he named "Zydeco."

---

[2] The Court notes that these allegations were not explicitly set forth in numbered counts or causes of action. Instead, these allegations were raised generally throughout the Complaint.
[3] All ECF docket numbers refer to this Court's docket for 3:22-cv-60, unless otherwise stated.

Shortly thereafter, the Appellant, on his own, formed Applied Philosophy Lab, P.B.C., a public benefit corporation, and Indeco LLC, a wholly owned subsidiary of Applied Philosophy Lab. These corporations existed in direct competition with Geostellar's new cryptocurrency business. Notably, according to SEC filings, Applied Philosophy Lab intended to do business as "Zydeco," which is the name of the cryptocurrency currency to be developed by Geostellar at the Appellant's direction. Additionally, SEC filings show that Indeco, LLC, also intended to offer a cryptocurrency.

Around this same time, the Appellant directed that Geostellar's proprietary software be converted to opensource software. The Appellant then terminated all employees of Geostellar and hired Geostellar's former engineering department to work for Indeco Union.[4] Ultimately, the Appellee claimed that the Appellant violated his contractual and fiduciary duties to Geostellar, defrauded Geostellar, and conspired with Indeco Union against Geostellar.

On August 23, 2019, the Appellant and then-Defendant Indeco Union[5] filed a Motion to Dismiss and Strike. ECF No. 14-3. In the motion to dismiss, the Appellant argued that the Appellee's claims were subject to the arbitration clause found in the Appellant's Employment Agreement. The Appellant also argued that the Appellee failed to state a claim upon which relief could be granted.

In his February 7, 2020, Memorandum Opinion, United States Bankruptcy Judge Patrick M. Flatley found that the arbitration clause in the Employment Agreement covered

---

[4] According to the Appellee, Indeco Union is the current name of what had originally been Applied Philosophy Lab, P.B.C., and Indeco, LLC. These entities became a single entity known as Indeco Union on June 27, 2018.
[5] On May 3, 2021, Indeco Union was dismissed from the underlying adversary proceeding in an Agreed Order. ECF No. 48 in 3:19-ap-24. Further, Indeco Union is not a party to this appeal, so the Court will no longer include Indeco in its background summation.

all the Appellee's claims. ECF No. 14-6. The bankruptcy judge noted that the arbitration clause governs "any and all disputes . . . arising from or relating to . . . the Executive's employment." ECF No. 14-6 at 6. The bankruptcy judge found that the complaint centered "almost exclusively around conduct Mr. Levine likely undertook in his role as CEO." ECF No. 14-6 at 6.

The bankruptcy judge highlighted six specific events described in the complaint as examples of the Appellant acting as CEO: (1) the Appellant "caused employees of the engineering department of Geostellar, Inc., to curtail work related to the development of a solar energy marketplace and instead to cause those employees to begin working on the development of a cryptocurrency," [ECF No. 14-6 at 6 (quoting ECF No. 14-1 at ¶ 27)] (2) the Appellant "caused the filing of a Form C, as required by 17 C.F.R. § 227.100, et seq., with the Securities and Exchange Commission in connection with efforts to obtain Crowdfunding for Geostellar, Inc.," [ECF No. 14-6 at 6 (quoting ECF No. 14-1 at ¶ 29)] (3) the Appellant made a presentation "to the Board of Directors of Geostellar, Inc., . . . concerning the development of the cryptocurrency to be known as Zydeco," [ECF No. 14-6 at 6 (quoting ECF No. 14-1 at ¶ 31)] (4) the Appellant "appropriated the business plan of Geostellar, Inc., for competing companies which he had created," [ECF No. 14-6 at 6 (quoting ECF No. 14-1 at ¶ 44)] (5) the Appellant "did not accept direction from the Board of Directors," [ECF No. 14-6 at 6 (quoting ECF No. 14-1 at ¶ 46)] and (6) the Appellant "directed that the proprietary software developed by Geostellar, Inc., ... be converted to 'open source' software" [ECF No. 14-6 at 6 (quoting ECF No. 14-1 at ¶ 47)].

Further, to the extent that the Appellee argued that he raised claims against the Appellant as a director, not CEO, of Geostellar, the bankruptcy judge found that these

claims, if they existed, were also subject to arbitration. In analyzing the Appellee's claims against the Appellant as a director, the bankruptcy judge found those claims to be "inexorably linked to [the Appellant's] conduct as CEO." ECF No. 14-6 at 6. Lastly, the bankruptcy judge held that the Appellee's claims were "non-core," finding that "nothing alleged by the [Appellee] implicates a provision of the Bankruptcy Code, the related rules, or this court's administration of bankruptcy." ECF No. 14-6 at 7. Therefore, the bankruptcy judge found he had no discretion to withhold arbitration.

Despite finding that all the Appellee's claims were subject to arbitration, the bankruptcy judge held the motion to dismiss in abeyance in order to allow the Appellant's own Chapter 13 bankruptcy proceedings to develop. Without entering an order adjudicating the motion to dismiss or directing the parties to arbitration, the bankruptcy court directed the parties to participate in mediation.

Following unsuccessful mediation, and still without an order directing the parties to arbitrate, the Appellee filed a Motion for Leave to File Amended Complaint. ECF No. 14-12. In his motion, the Appellee stated that he intended to use the amended complaint "to 'moot' the Court's referral of this matter to arbitration." ECF No. 14-12 at 4. United States Bankruptcy Judge B. McKay Mignault granted the Appellee's motion and ordered that the amended complaint attached to the motion be filed.

The Amended Complaint sets forth four causes of action: "Count I Breach of Fiduciary Duty of Loyalty as CEO, Chairman of the Board, and/or Board Member of Geostellar, Inc.," "Count II Negligence," "Count III Constructive Fraud and/or Negligent Misrepresentation of Facts," and "Count IV Violation of Uniform Trade Secrets Act." ECF No. 14-17 at 10, 12, 14, 16. The amended complaint did not include Indeco Union as a

5

Defendant in accordance with the prior agreed order, and it abandoned the breach of contract and civil conspiracy claims. Further, unlike with the initial complaint, the Appellee did not attach the Employment Agreement and Addendum.

In response to the amended complaint, the Appellant filed a Motion to Dismiss and Motion to Compel Arbitration. ECF No. 18. In his supporting memorandum, the Appellant averred that the factual allegations set forth in the amended complaint are largely the same factual allegations found in the original complaint. Therefore, the Appellant argued that Bankruptcy Judge Flatley's earlier findings compelling arbitration should apply to the amended complaint. The Appellant asserted that although the causes of action have been renamed, the facts alleged in the Amended complaint still pertain to the Appellant's employment as CEO and are covered by the arbitration provision. Further, the Appellant emphasized that the Appellee's abandonment of the breach of contract claim and removal of the Employment Agreement from the amended complaint do not negate the effectiveness or enforceability of the Employment Agreement.

Additionally, the Appellant moved to dismiss based on the Appellee's failure to state a claim. As it pertained to Count I, the Appellant argued that the gist of the action doctrine barred recovery because the Appellee's claim for breach of fiduciary duty stems from the Employment Agreement, not common law. Next, the Appellant argued that the Appellee's claim of negligence in Count II violated both the gist of the action doctrine and economic loss action. The Appellant averred that the Appellee's allegations in support of his negligence claim are nearly identical to those in his breach of fiduciary duty claim, and those duties were imposed by the Employment Agreement. Moreover, the Appellant asserted that he did not have a special relationship with Geostellar as required to

overcome the economic loss doctrine. For Count III, the Appellant argued that the Appellee failed to state his constructive fraud and negligent misrepresentation claim with sufficient particularity. The Appellant did not set forth a specific argument for the dismissal of Count IV.

On March 21, 2022, Chief Bankruptcy Judge Mignault entered a Memorandum Opinion denying the Appellant's Motion to Dismiss and Motion to Compel Arbitration. ECF No. 14-23. In her opinion, the bankruptcy judge noted that the original complaint in this matter "contained principally a breach of contract action against [the Appellant] based upon his employment as CEO." ECF No. 14-23 at 4. The bankruptcy judge stated that this "claim undoubtedly fell within the subject arbitration clause." ECF No. 14-23 at 4.

However, the bankruptcy judge placed great importance on the fact that the Appellee abandoned the breach of contract claim in the amended complaint. Further, the bankruptcy judge found that the Appellee "chose to not bring a claim against [the Appellant] based upon his employment as CEO." ECF No. 14-23 at 5. Most significantly, the bankruptcy judge held that the Appellee's "amended complaint is as distinct from a breach of contract action as Mr. Levine's employment as CEO is distinct from his service as a director. CEO and director are two separate hats that Mr. Levine wore in his time with the Debtor." ECF No. 14-23 at 5. The bankruptcy judge emphasized that the claims raised in the original complaint lacked a distinction between claims against the Appellant as CEO and claims against the Appellant as director, while the amended complaint did not. Because of this newly pled distinction, the bankruptcy judge held that the adversary proceeding was not subject to arbitration.

This newfound distinction also played a significant role in the bankruptcy judge's

analysis of the Appellant's motion to dismiss. In finding that the gist of the action doctrine did not preclude relief, the bankruptcy judge found that the Appellee "abandoned his contract action and seeks only to recover from Mr. Levine based upon alleged breaches of duties Mr. Levine owed to the Debtor as a member of the Debtor's board of directors." ECF No. 14-23 at 6. Indeed, the bankruptcy judge reiterated that the Appellant's "role as CEO and his role as a director are distinct." ECF No. 14-23 at 7. Despite acknowledging that "the same operative facts support both a contract action and tort actions," the bankruptcy judge found this overlap "immaterial." ECF No. 14-23 at 7.

As to the Appellant's economic loss doctrine argument, the bankruptcy judge found that a special relationship existed between Geostellar and the Appellant because the Appellant served as one of Geostellar's directors. Again, the bankruptcy court emphasized that it "views [the Appellant's] two roles with [Geostellar] as distinct and equal." ECF No. 14-23 at 7. Therefore, the economic loss doctrine did not preclude relief. Lastly, the bankruptcy judge found that the Appellant's constructive fraud claim was stated with sufficient particularity. Consistent with the findings in its Memorandum Opinion, the bankruptcy court entered an Order denying the Appellant's motion to compel arbitration and motion to dismiss on March 21, 2022.

### B.  Instant Appeal

The Appellant brings this civil action on appeal from Chief Bankruptcy Judge Mignault's March 21, 2022, Memorandum Opinion and Order Denying Defendant's Motion to Dismiss and Motion to Compel Arbitration. ECF No. 1. This civil action was briefly stayed while the parties pursued another round of mediation in the bankruptcy court. ECF No. 11. The parties were unable to resolve the adversary proceeding [ECF

No. 12], and this Court lifted the stay [ECF No. 13].

The Appellant filed his Brief on August 11, 2022, [ECF No. 16], and the Appellee filed his Response Brief on September 12, 2022 [ECF No. 18]. The Appellant timely entered his Reply Brief on September 23, 2022. ECF No. 19.

However, prior to the filing of briefs on appeal, the Appellee filed a Motion to Dismiss Appeal. ECF Nos. 7, 8. Therein, the Appellee asserted that this Court lacks jurisdiction because the bankruptcy court's March 21, 2022, Memorandum Opinion and Order are not appealable. This Court held that it had jurisdiction over the bankruptcy judge's ruling on the Appellant's underlying motion to compel arbitration but not the motion to dismiss. ECF No. 20.

Although raised together in one motion, this Court found that the Appellant's argument for arbitration and his argument for failure to state a claim were separate and distinct. Similarly, even though the bankruptcy court's order denied compulsory arbitration and dismissal in one order, this Court found that the bankruptcy court applied a separate analysis for each. Finding that a denial of a motion to dismiss is not a final order, this Court held that the underlying denial of the Appellant's motion to dismiss constituted an interlocutory order that was not immediately appealable. Therefore, this Court held that it was without jurisdiction to review the bankruptcy court's denial of dismissal.

Upon review of the Appellant's motion to compel arbitration, the Court found that it does have jurisdiction to hear the appeal of the bankruptcy court's denial of the motion. The Federal Arbitration Act ("FAA") provides that "[a]n appeal may be taken from an order . . . denying an application under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1)(C). Section 206 of Title 9 governs orders to compel arbitration. In initiating this

action, the Appellant properly appealed from an order denying its motion to compel arbitration.

## II.  Jurisdiction

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157." 28 U.S.C. § 158(a). To be "final," an order must "resolve the litigation, decide the merits, settle liability, establish damages, or determine the rights" of a party to the bankruptcy case. In re Looney, 823 F.2d 788, 790 (4th Cir. 1987). The district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

As alluded to above, this appeal is properly before this Court pursuant to the FAA. The FAA provides that "[a]n appeal may be taken from an order . . . denying an application under section 206 of this title to compel arbitration." 9 U.S.C. § 16(a)(1)(C). Section 206 of Title 9 governs orders to compel arbitration, and in initiating this action, the Appellant appeals from an order denying its motion to compel arbitration.

## III. Standards of Review

A district court sitting as a bankruptcy appellate court reviews "findings of fact only for clear error, but [the court] consider[s] the relevant legal questions de novo." In re Varat Enters., Inc., 81 F.3d 1310, 1314 (4th Cir. 1996). It reviews mixed questions of fact and law de novo. In re Gordon Properties, LLC, 516 B.R. 323, 327 (E.D. Va. 2014) (citing Canal Corp. v. Finnman, 960 F.2d 396, 399 (4th Cir. 1992)).

Clear error review is a "very deferential standard of review." United States v.

Horton, 693 F.3d 463, 474 (4th Cir. 2012). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." HSBC Bank USA v. F & M Bank N. Va., 246 F.3d 335, 338 (4th Cir. 2001) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). For clear error review, the inquiry is not whether the reviewing court would have reached the same result if it were sitting in the trial court's shoes.

Rather, the appellate court will determine whether the trial court's "account of the evidence is plausible in light of the record viewed in its entirety." United States v. Thorson, 633 F.3d 312, 317 (4th Cir. 2011) (quoting Anderson, 470 U.S. at 573-74). If the findings of the court below are plausible, then the reviewing court may not reverse the lower court's conclusion—even if it may have weighed the evidence differently. Id. This remains the rule "even when the district court's findings do not rest on credibility determinations but are based instead on physical or documentary evidence or inferences from other facts." Id. (internal quotation omitted). Lastly, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." In re Gordon Properties, LLC, 516 B.R. at 327.

De novo review, on the other hand, by definition, "entails consideration of an issue as if it had not been decided previously." Stone v. Instrumentation Lab'y Co., 591 F.3d 239, 246 (4th Cir. 2009). De novo review allows for "a fresh independent determination of 'the matter' at stake." Doe v. United States, 821 F.2d 697-98 (D.C. Cir. 1987). Essentially, de novo review results in "a new adjudication." Betty B Coal Co. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab., 194 F.3d 491, 499 (4th Cir.1999).

## IV. Legal Analysis

The Appellant presents three issues for this Court on appeal. First, the Appellant requests a determination on whether the bankruptcy court erred in denying the Appellant's Motion to Compel Arbitration. More specifically, the Appellant requests a determination on whether the bankruptcy court erred in finding that the Appellee's amended complaint does not state any claims based on the Appellant's alleged conduct as CEO. The second and third issues the Appellant raises involve the Appellant's underlying Motion to Dismiss and the bankruptcy judge's reasoning in denying the motion. However, as found in this Court's prior Order, this Court lacks appellate jurisdiction over the bankruptcy judge's denial of the Appellant's motion to dismiss in the underlying adversary proceeding.

Therefore, this Court limits its ruling on appeal to the first issue presented contesting the bankruptcy court's denial of arbitration. The Court will review the bankruptcy court's denial of arbitration de novo. Muriithi v. Shuttle Express, Inc., 712 F.3d 173, 178 (4th Cir. 2013). The Court notes that the Appellee argues that the Court should apply an abuse of discretion standard of review. ECF No. 18 at 11. The Court finds that the Appellee is blatantly incorrect. Indeed, the case cited by the Appellee in support of its claim, In re White Mountain Mining Co., L.L.C., does not establish an abuse of discretion standard of review for cases of this kind. 403 F.3d 164, 168 (4th Cir. 2005). Instead, like this Court described above, the Fourth Circuit in White Mountain, stated that "[w]e review de novo the conclusions of law reached by the district and bankruptcy courts, and we review the bankruptcy court's findings of fact for clear error." Id.

12

### A. Applicable Law

The FAA, 9 U.S.C. §§ 1-16, applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). This policy is supported by Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001). Therefore, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989)).

To compel arbitration under the FAA, the Fourth Circuit requires the moving party

> demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

Adkins, 303 F.3d at 500-01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). "Under the FAA, courts must stay any suit 'referable to arbitration' under an arbitration agreement, where the court has determined that the agreement so provides, and one of the parties has sought to stay the action." Noohi v. Toll Bros., Inc., 708 F.3d 599, 604 (4th Cir. 2013).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Motions to compel arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Zandford v. Prudential-Bache Sec., Inc., 112 F.3d 723, 727 (4th Cir. 1997) (citations and internal quotation marks omitted). "Indeed, the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989) (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)).

**B. Analysis**

The crux of the Appellant's remaining issue on appeal turns on the second Adkins factor: whether the arbitration agreement covers the parties' dispute. The Appellant's Employment Agreement with Geostellar includes a provision requiring that "any and all disputes, claims, or causes of action, law or equity, arising from or relating to the enforcement, breach, performance, or interpretation of this Agreement, the Executive's employment, shall be resolved, to the fullest extent permitted by law, final, binding and confidential arbitration." ECF No. 14-19, Ex. B, Employment Agreement ¶ 7.11. Specifically, the issue this Court must decide is whether the Appellee's amended complaint asserts any claims against the Appellant in his role as CEO.

Both the Appellee and the bankruptcy judge place great emphasis on the amended

complaint's abandonment of the breach of contract claim. Indeed, in his underlying motion for leave to amend, the Appellee expressly stated that his purpose in amending the complaint was "to delete the claim for breach of employment contract to reduce coverage issues, and to 'moot' the Court's referral of this matter to arbitration." ECF No. 14-12 at 4.

When differentiating the court's second arbitration ruling from its first, the bankruptcy judge began by emphasizing that "there is no action for a breach of contract" in the amended complaint. ECF No. 14-23 at 5. Further, despite conceding that "at least some of the underlying facts supporting the [Appellee's] amended complaint could also support a breach of contract action," the bankruptcy court found that by simply not bringing a breach of contract action, the Appellee "chose not to bring a claim against [the Appellant] based upon his employment as CEO." ECF No. 14-23 at 5.

This Court disagrees with the bankruptcy judge's characterization of the amended complaint and the scope of the arbitration provision. First, the arbitration provision covers both claims arising from the text of the Employment Agreement directly *and* claims related to "the Executive's employment." ECF No. 14-19, Ex. B, Employment Agreement ¶ 7.11. This Court finds that claims can be levied against the Appellant for his conduct as CEO separate from any claim for breach of contract. The arbitration provision is drafted to cover claims regarding "the enforcement, breach, performance, or interpretation of this Agreement," and, *separately*, to cover claims related to "the Executive's employment." ECF No. 14-19, Ex. B, Employment Agreement ¶ 7.11. Under this clause, a party could file suit pertaining to the written words of the Agreement or pertaining to the real world actions of the Appellant as CEO.

Here, this Court finds that claims related to the Appellant's conduct while serving

in his role as CEO are covered by the arbitration provision's clause, regardless of whether a breach of contract cause of action is separately raised. Therefore, to the extent that the bankruptcy judge found that the arbitration provision does not cover the parties' dispute because the amended complaint does not include a breach of contract cause of action, the bankruptcy court's opinion is **reversed**.

Next, in denying the Appellant's motion to compel arbitration, the bankruptcy judge noted that "CEO and director are two separate hats that [the Appellant] wore in his time with [Geostellar]." ECF No. 14-23 at 5. This Court agrees that one individual can change hats and act as CEO in some instances and Board Director in others. Continuing on, the bankruptcy court found that the distinction between the Appellant as CEO and the Appellant as Board Director was lacking in the original complaint, and this Court agrees.

However, this Court splinters from the bankruptcy court as to the pleading of the amended complaint. The bankruptcy court placed great emphasis on the amended complaint's distinction between the two hats. Indeed, the bankruptcy judge chided the Appellant for "conflat[ing] his employment as CEO with his service on [Geostellar's] board of directors" when he argued that the parties should still be compelled to arbitrate the claims raised in the amended complaint. ECF No. 14-23 at 5.

This Court does not find that the Appellee pled a distinction, let alone a significant distinction, between actions the Appellant took as CEO and actions the Appellant took as Board Director in the amended complaint. On appeal, the Appellant similarly struggled to find clear distinctions in the amended complaint of when the Appellant acted as CEO and when the Appellant acted as Board Director. Notably, the Appellee, responding to the Appellant on this issue, plainly stated in his brief that it would be "an unreasonable

demand" to require the Appellee to distinguish the Appellant's conduct as CEO from his conduct in other roles. ECF No. 18 at 13. Despite the bankruptcy judge finding that these distinctions were pled in the amended complaint, this Court finds that they were not.

Most notably, the first cause of action pled in the amended complaint is titled "Breach of Fiduciary Duty of Loyalty as CEO, Chairman of the Board, and/or Board Member of Geostellar, Inc." ECF No. 14-17 at 10. Similarly, the second supporting paragraph for the second cause of action refers to the Appellant "[a]s Chief Executive Officer." ECF No. 14-17 at ¶ 55. This Court finds, similar to the bankruptcy court's first arbitration ruling, that the claims, if any, against the Appellant as Director are inexorably linked to his conduct as CEO. While the Appellee may argue that his claims are distinct, this Court finds that his own pleading contradicts his argument.

Indeed, all parties and judges involved in this action agree, albeit to differing degrees and significances, that the factual allegations in the amended complaint overlap with those first pled in the original complaint. This Court finds that the factual allegations— which are incorporated by reference into all four causes of action in the amended complaint—are substantially similar to those found in the original complaint. To the degree the pleaded facts differ, the facts do not differ to the degree or in the manner found by the bankruptcy judge.

In the amended complaint, forty-seven paragraphs precede the four substantive counts. The Court construes these forty-seven paragraphs as composing the factual allegations of the amended complaint. After comparing the complaints, this Court found that thirty-five of the forty-seven paragraphs in the amended complaint are substantially similar to paragraphs found in the original complaint; a considerable percentage are

17

identical nearly word-for-word. Regardless of the diction used, the Court finds that those thirty-five paragraphs provide the same factual information provided in the original complaint.

Throughout the amended complaint, the Appellee often situates the Appellant as an individual reporting to the Board of Directors or acting without their consent. At no point does the Appellee describe the Appellant as acting solely in his capacity as a Board member or engaging with fellow or other members of the Board. Instead, the Appellee situates the Appellant as an individual operating in a separate capacity from the Board, not as part of the Board. Indeed, the amended complaint describes at least twelve different instances when the Appellant acted without Board approval, in direct defiance of the Board, or otherwise adverse to the Board's wishes. E.g. ECF No. 14-17 at ¶¶ 18, 20, 21, 29, 30, 31, 32, 34, 36, 39, 44, 45.

For example, the Appellee alleges that the Appellant diverted Geostellar from its solar energy work to cryptocurrency development "without Board approval." ECF No. 14-17 at ¶ 18. Similarly, the Appellee alleges that the Appellant redirected the focus of Geostellar's engineering department to developing cryptocurrency "without Board approval." ECF No. 14-17 at ¶ 20. In that same paragraph, the Appellee repeats that the Appellant acted "not having Board approval for his diversion," and the Appellee claims that the Appellant made false statements to the Board. ECF No. 14-17 at ¶ 20. As the Appellant pursued this new business direction, the Appellant alleges that the Appellant "refused to accept direction from the Board of Directors." ECF No. 14-17 at ¶ 21. When describing the steps the Appellant took to transfer Geostellar's intellectual property over to Applied Philosophy Lab, the Appellee emphasizes that the cryptocurrency

development had "never been authorized by Geo's board." ECF No. 14-17 at ¶ 36. The Appellee's description of these events, among others, establishes the Appellant as a rogue CEO acting unilaterally and, at times, in direct defiance of the Board.

Generally, a common responsibility of a CEO is to manage the company's executive team and pursue goals that are meant to drive the company forward; these goals are usually established by the company's Board of Directors.[6] In most cases, the CEO executes the Board's vision for the company. Here, the amended complaint almost entirely focuses on the many ways in which the Appellant did not further the Board's vision of Geostellar. Therefore, this Court finds that the amended complaint brings most, if not all, its claims against the Appellant in his role as CEO. Moreover, in the few instances when the Appellee refers to the Appellant as a Board member, the Appellee simultaneously refers to the Appellant as CEO. ECF No. 14-17 at ¶ 15, 16, 36, 55, 57.

In sum, this Court finds that the claims in the amended complaint are subject to the arbitration provision in the parties' Employment Agreement. While the Appellee abandoned his breach of contract claim in his amended complaint, this Court finds that the arbitration provision governs more than claims raised pursuant to the Employment Agreement document itself. The arbitration provision applies to claims arising from or related to the Appellant's conduct as CEO.

While the Appellant and bankruptcy judge interpret the amended complaint as not

---

[6] See, e.g., Thuy-Nga T. Vo, To Be or Not to Be Both Ceo and Board Chair, 76 BROOK. L. REV. 65, 68-69 (2010) ("It is well settled, though, that a board may delegate its management authority to corporate officers, and that such delegation is now the norm in corporate America. It is the officers who in fact manage most public corporations on a day-to-day basis. Having delegated the daily management function to the executives, directors retain oversight responsibility in order to ensure that the executives' actions advance the company's business and financial objectives."); Paul Mallette & Karen L. Fowler, Effects of Board Composition and Stock Ownership on the Adoption of "Poison Pills", 35 ACAD. MGMT. J. 1010, 1012 (1992) ("[I]t is widely accepted that boards are the formal representatives of firm'' shareholders and that they exist to monitor top management performance and protect shareholders' rights and interests.").

raising claims against the Appellant in his role as CEO, this Court finds otherwise. As analyzed above, this Court finds that the substantial majority of the factual allegations describe the Appellant's conduct as CEO. Most significantly, Count I explicitly names the Appellant in breach of his fiduciary duty "as CEO." ECF No. 14-17 at 10. Similarly, in the supporting paragraph of Count II, the Appellee identifies the Appellant "[a]s Chief Executive Officer." ECF No. 14-17 at ¶ 55. Counts III and IV do not contain explicit references to the Appellant's job title, but both Counts refer to actions taken by the Appellant in his role as CEO. Indeed, all four Counts incorporate by reference the factual allegations made in the complaint. Therefore, to the extent that the bankruptcy judge's opinion found that the Appellee's amended complaint does not state any claims based on the Appellant's alleged conduct as CEO, the bankruptcy court's opinion is **reversed**.

### V. Conclusion

For the reasons discussed above, this Court **ORDERS** that the March 21, 2022, United States Bankruptcy Court for the Northern District of West Virginia Memorandum Opinion and Order Denying Defendant's Motion to Dismiss and Motion to Compel Arbitration in 3:19-ap-24 be **REVERSED IN PART**. The bankruptcy court's ruling denying arbitration is **REVERSED**. The Court is without jurisdiction to rule on the remaining portion of the Memorandum Opinion and Order that adjudicates the motion to dismiss. The Court **REMANDS** this action to the United States Bankruptcy Court for the Northern District of West Virginia for further proceedings consistent with this Court's ruling.

The Appellant's Objections [ECF No. 5] are **TERMINATED as MOOT.**

The Clerk of Court is **DIRECTED** to transmit copies of this Order to the United States Bankruptcy Court for the Northern District of West Virginia and all counsel of record

herein.

**DATED**: August 8, 2023

GINA M. GROH
UNITED STATES DISTRICT JUDGE